[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on July 23, 1983, a total of 15 years. They have been separated for more than a year. By complaint dated October 24, 1997, the Wife instituted this action claiming a dissolution of marriage, custody of minor children, support, alimony, property division, counsel fees, and other relief. The Husband, who appeared through counsel but did not attend the trial, filed an answer and cross complaint admitting the allegations in the Wife's complaint and, in the cross complaint, claimed a dissolution of marriage, joint custody, an equitable division of the marital property, and other relief.
On the day of trial, which had been set four weeks earlier, the Husband's counsel requested a continuance, which was denied, from Judge Deborah Kochiss Frankel based upon the allegation that his client had an "emergency" business meeting in Hong Kong. A second request was made to the court at the start of trial which was also denied. Details of the so-called emergency were not disclosed. The court, in denying this second request, noted that the Husband had failed to appear at previous court hearings, at a scheduled deposition, or at the special masters session. Further, he had been less than forthright in his answers to disclosure or in the filing of rule required documents, and had ignored previous court warnings that he would not determine the progress of the litigation.
Three children were born to the Wife during the marriage, to wit: Kevin, born January 30, 1985, Brian, born December 19, 1987, and Neil, born January 29, 1990. The children, all of whom are in good health, reside with their mother in Weston and see their father, who appears to reside primarily in the Philippines, only occasionally. Not surprisingly, visitation has not gone smoothly. During a deposition given on January 15, 1998, the Husband admitted that he also has a two-year-old child from a relationship with a Philippine woman.
The Wife is 39 years of age, in good health, and a high school graduate. The Husband is 40 years of age, in good health, and has a B.S. degree in engineering. He is also pursuing a course of study which will lead to an M.B.A. degree.
At the time of the marriage, which took place in Malta the Wife's country of origin, the Husband was employed as an engineer on a North Sea oil rig. He currently is employed as an engineer for a New Jersey firm, Ogden Projects, Inc., traveling throughout the world on various assignments, although he is primarily CT Page 1201 stationed in the Philippines. In fact, at his deposition he testified that he is officially a resident of and has the right to work in the Philippines (plaintiff's exhibit D). His financial affidavit showed him earning $125,312 per year excluding dividends and interest. No federal or state income taxes appear to be deducted from his salary (defendant's exhibit #3) and the Husband himself testified at his deposition that his company "pays foreign income taxes incurred." In addition, he receives self-employment income from an engineering consultant business which he operates. In 1995 said business had a gross of $61,554 (defendant's exhibit #2). No more current information was available at trial because of the Husband's failure to cooperate during discovery or at the special masters program. In addition, all living expenses of the Husband while out of the country, virtually the entire year, are paid for by his company. The court finds that he has an income capacity of $165,000 ($125,000 from employment and $40,000 from consultant work).
The Wife is essentially a homemaker although she did earn $5,305.15 in 1998 as a part time office worker. She has no discernable skills and would have to be retrained if she were to become meaningfully employed. Problems associated with the divorce, her responsibilities to the three children, and the absence of a husband to help also militate against early employment.
No pre marital assets were disclosed, however, during the marriage the parties acquired substantial assets. Because the Husband did not file a current financial affidavit at the start of the trial, the court relied upon the financial affidavit of the Wife, her testimony, and the relatively current financial affidavit of the Husband dated September 3, 1998, to piece together the financial picture of the parties. The largest asset was the mortgage free marital residence at 143 Old Hyde Road in Weston having a fair market value of $410,000. In addition, the parties owned two old vehicles of nominal value, miscellaneous household items with a value of $40,000, bank accounts as shown on Husband's financial affidavit of $4,500, mutual funds as shown on Husband's financial affidavit of $218,650, deferred compensation plans as shown on Husband's financial affidavit of $139,500, miscellaneous other assets as shown on Husband's financial affidavit of $12,000, bank accounts as shown on Wife's financial affidavit of $32,012.26, and deferred compensation plans as shown on the Wife' s financial affidavit of $65,182. CT Page 1202
The Husband showed a liability to Stop Shop Visa of $16,000 and the Wife showed no liabilities on their respective financial affidavits. Additionally, the Wife reported that the residence is in need of various repairs which are estimated to cost approximately $50,000.
In addition to assets in names of the parties, the children had independent assets of their own in various UGMA USAA mutual funds accounts, including $50,627 for Kevin, $46,103 for Neil, and $15,500 for Brian. In each case the Husband is named as custodian. An undisclosed sum, apparently without authorization, was withdrawn from the children' s accounts in order to assist in the purchase of the current marital residence. During her testimony, the Wife expressed legitimate concern over the Husband's continued control over the children's money
The parties had a station in life commensurate with their ages, education and incomes. They traveled frequently throughout the world, often using the Husband's frequent flier miles and his expense account. Their relative contributions to the acquisition, appreciation, and preservation of value of the acquired assets would appear to be reasonably equal. Parties contribute in different ways in the shared enterprise that is a marriage. Given their present circumstances, it appears that the Husband would have a greater opportunity to accumulate assets and income in the future than would the Wife.
It would serve no useful purpose to chronicle the causes for the breakdown of the marriage which is clearly irretrievable. The Wife claimed that there were problems for the past six years and that the Husband gradually withdrew from all aspects of family life. The breaking point was reached after the Wife learned of the Husband' s illegitimate child. It is abundantly clear from the testimony that the Husband was primarily responsible for the breakdown.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 81 5j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
CT Page 1203
The marriage is dissolved on the grounds of an irretrievable breakdown.
Custody and Visitation
Custody of the minor children is awarded to the Wife subject to reasonable rights of visitation to the Husband. In addition, the Husband shall have reasonable telephone and mail access to the children. The Husband shall immediately disclose to the Wife his telephone number and address where he can be reached in the event of an emergency. During his visitation, the Husband shall not remove the children outside of the state of Connecticut without prior written agreement of the Wife. All passports belonging to the children shall be in the sole control of the Wife.
Child Support
The Husband shall pay to the Wife child support in the amount of $2,300 per month, pursuant to an immediate wage withholding order, which comports with the Child Support Guidelines. Child support shall continue until a child shall attain the age of 18 years, unless said child is still enrolled in high school, whereupon it shall continue until graduation, but in no event beyond a child's nineteenth (19th) birthday.
Alimony
The Husband shall pay to the Wife alimony in the amount of $4,000 per month, pursuant to an immediate wage withholding order, until the death of either party, the Wife's remarriage or cohabitation as defined in Conn. Gen. Stat. Sec. 46b-86.
Medical Insurance
The Husband shall continue to maintain the medical insurance he now has in force through his place of employment for the benefit of the minor children. All unreimbursed medical and dental expenses shall be equally shared by the parties.
The Husband shall also continue to maintain said medical insurance for the benefit of the Wife at his cost until such time as the Wife secures coverage of her own, but in no event longer than one year from date. CT Page 1204
Life Insurance
The Husband shall name the Wife beneficiary on $100,000 of life insurance insuring his life until he no longer has any financial obligation to her for either child support or alimony. Further, he shall name the minor children equal beneficiaries on any group life insurance insuring his life available to him from employment. Within 30 days from date, and upon reasonable request thereafter, he shall furnish the Wife with satisfactory evidence that the insurance is being properly maintained.
Arrearage
Pendente lite alimony and child support arrearage, if any, is to be made current within 30 days from date. On the date of trial said arrearage was reported to be $5,713.30.
Custodial Accounts
All children's custodial accounts are to be transferred to the Wife as custodian. She shall account to the Husband annually on the status of said accounts.
Real Estate
Title to the real estate located at 143 Old Hyde Road in Weston, a legal description of which is attached hereto and made a part hereof, jointly owned by the parties, is ordered assigned to the Wife pursuant to the provisions of Conn. Gen. Stat. Sec. 46b.
Personal Property
All of the furniture and personal possessions now located in the marital residence are awarded to the Wife. The Husband may retain his tools, computer equipment, and stamp collection as well as all personal property he may have in his foreign residence.
The 1984 and 1988 Ford automobiles are awarded to the Wife.
Division of Liquid Assets
The Wife shall retain the following assets: Lafayette CT Page 1205 American, Weston (joint checking), Lafayette American, Weston (money market), USAA Money Market Fund (sole), and Lafayette American, Weston (sole checking).
The Husband shall retain the following assets: Enron stock (254 shares); USAA bank (checking) and Citibank (checking).
The balances in the following mutual funds accounts shall be divided equally: Janus, American Century, Scudder, Vanguard, and Safeco.
Deferred Assets
The Husband's deferred assets, Ogden Energy 401 k, Janus Fund IRA, and USAA IRA, and the Wife's deferred assets, Janus 20 Fund IRA, Janus Money Market Fund IRA, USAA Cornerstone Strategy Fund IRA, shall be lumped together and divided equally. A tax-free rollover from the Husband's IRA portfolio to the Wife's IRA portfolio shall be used to equalize the accounts.
Liabilities
Each party shall be responsible for her or his own liabilities.
Counsel Fees
The Husband shall pay to the Wife the sum of $15,000 toward her counsel fees within 30 days from date.
Taxes
By April 15 of each year, until there is no longer any financial obligation for child support or alimony, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then existing.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein. Plaintiff's counsel to prepare the judgement file, have it certified by defendant's counsel, and file it with the court within 30 days. CT Page 1206
CUTSUMPAS, J.
PETER W. GORDON and DONNA L. GORDON of 11 Dogwood Lane, Weston, Connecticut, for consideration paid of FOUR HUNDRED AND FOUR THOUSAND ($404,000.00) DOLLARS, grants to PAUL M. CERULLO and MONICA CERULLO of 28 Cross Highway, Westport, Connecticut, as Joint Tenents with Right of Survivorship;
WITH WARRANTY COVENANTS
ALL THAT CERTAIN piece or parcel of land, together with all buildings and improvements thereon, located in the Town of Weston, County of Fairfield and State of Connecticut, shown and designated as Lot A1, 2.040 acres on a certain map entitled "Survey Prepared for Herbert Gordon and Herbert L. Fane, Weston, Conn. Scale 1" = 100' February 10, 1972, certified substantially correct, Charles L. Lyman, Land Surveyor", which map was filed in the Weston Town Clerk's Office, on March 29, 1972, and bears #2204 in said Town Clerk's Office, said premises being more particularly bounded and described as follows:
NORTHERLY: By land now or formerly of Elizabeth Johnson, as shown on said map, 115 feet;
EASTERLY: By Lot A2, as shown on said map, 61 feet;
SOUTHERLY: By Lot A2, as shown on said map, 95 feet;
EASTERLY Again: By Lot A2, as shown on said map, 73.65 feet;
EASTERLY Again: By Lot A2, as shown on said map, 72.51 feet;
SOUTHEASTERLY: By Lot A2, as shown on said map, 214.37 feet;
SOUTHERLY: By a private drive as shown on said map, 100 feet;
SOUTHERLY Again: By Old Hyde Road, as shown on said map, 140.90 feet;
WESTERLY: By Old Hyde Road, as shown on said map, 104.29 feet; NORTHWESTERLY: By land now or formerly of Elizabeth Johnson, CT Page 1207 460.62 feet.
SAID PREMISES ARE CONVEYED SUBJECT TO:
1. Taxes becoming due and payable to the Town of Weston.
2. Zoning rules and regulations of the Town of Weston.
3. Riparian rights in and to a brook as shown on said map.
SIGNED THIS ___ day of April, 1997.
 ____________________ _____________________ Robert E. Grant Peter W. Gordon
 ____________________ _____________________ Lisa A. Wood Donna L. Gordon
 STATE OF CONNECTICUT : :ss. Westport April ___, 1997 COUNTY OF FAIRFIELD :
PERSONALLY APPEAR, PETER W. GORDON AND DONNA L. GORDON, signers and sealers of the foregoing instrument, who acknowledge the same to be their free act and deed, before me.
 __________________________________ Robert E. Grant Commissioner of the Superior Court
Grantee's Latest Address:
143 Old Hyde Road Extension Weston, Connecticut 06883